UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| IRENE DALLIS, | : | |
|---|---|---|
| Plaintiff, | : | Civil Action No. 17-407 |
| v. | : | OPINION |
| NJ Transit Corporation, Amtrak | : | |
| Defendants. | : | |

This matter comes before the Court on Defendant New Jersey Transit Corporation's ("NJ Transit") Motion for Summary Judgment as to Plaintiff Irene Dallis' ("Plaintiff") claims for negligence. After reviewing the written submissions of the parties and considering the arguments advanced during the October 20, 2020 hearing, the Court has concluded, for the reasons set forth below, that NJ Transit's Motion will be GRANTED.

## I. Background

On December 13, 2014, Plaintiff, on her way to board a NJ Transit Train, fell while exiting an elevator at New York Penn Station ("NYPS"). Dkt. 75-17 at 1. It is undisputed that the fall occurred on Elevator Number 7 ("Elevator 7") on the passenger platform between Tracks 13 and 14, that it occurred because the elevator floor was uneven with the passenger platform floor, and that it occurred on property not owned or maintained by NJ Transit. Id. at 1–2; Dkt. 77-2 at 3, 5. As to this last point, the parties agree that co-defendant Amtrak is the owner of NYPS and that NJ Transit is merely a lessee with respect to a defined portion of the station—a portion which does not include

1

Elevator 7 or Tracks 13 and 14.[1] Dkt. 75-17 at 1; Dkt. 77-2 at 3. Accordingly, despite Plaintiff being on her way to board a NJ Transit Train, the fall did not occur on NJ Transit's leased property. It is on this basis, substantively, that NJ Transit files its Motion, arguing that when a party does not own or control a property, it cannot be liable for an injury allegedly caused by a dangerous condition of that property. Dkt. 75-17 at 1.

Despite its lack of ownership and contractual obligation, however, Plaintiff maintains that NJ Transit should be liable for her injuries. She testifies that NJ Transit—ostensibly through a loudspeaker system—directed her to use Elevator 7 to get to her train's boarding platform. Dkt. 75-9 at 18. She also asserts that NJ Transit used Tracks 13 and 14 to board its trains. Dkt. 17-1 at 1. In support of this latter proposition, Plaintiff submits a series of photographs at Tracks 13 and 14, which show a sign with the words "New Jersey" accompanying an arrow symbol. Dkt. 75-6. Based on these alleged facts, Plaintiff concludes that the area of the accident was "unquestionably under the control of NJ Transit," making summary judgment inappropriate. Dkt. 77-2 at 5.

It is important to note, however, that NJ Transit also seeks summary judgment on procedural grounds. Dkt. 75-17 at 1. In particular, it asserts that Plaintiff did not file a timely notice of claim or move for leave to file a late notice of claim as required by the New Jersey Tort Claims Act ("NJTCA"). Id. Plaintiff has not contested this point in any of its filings. Thus, the issues on this motion are whether Plaintiff's failure to file a notice of tort claim is fatal to her cause of action and, if not, whether liability attaches to NJ Transit as a result of its alleged use of Elevator 7 and Tracks 13 and 14.

---

[1] It is in fact undisputed that Elevator 7 between Tracks 13 and 14 is a part of another train's leased property, the Long Island Railroad. Dkt. 75-7 at ¶ 27.

## II. Legal Standard

A court will grant summary judgment "if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(a). A movant can satisfy these criteria by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the nonmoving party then must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256–57. In doing this, the "nonmoving party may

not 'rest upon mere allegations, general denials or . . . vague statements.'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. Discussion

**A. Lack of Notice**

As an initial matter, the Court must determine whether Plaintiff's claims are barred by the NJTCA. The NJTCA allows claimants to circumvent the doctrine of sovereign immunity by providing a limited measure of relief against the state, public employees, and public entities. See N.J.S.A. 59:1–2. At the same time, however, it sets forth certain procedural requirements that must be met prior to filing a suit for damages. § 59:8–3. Notice is one such requirement whereby claimants bringing a tort

4

claim against a "local public entity" must "file [notice of] the claim with the public entity within 90 days of accrual of the claim" or, if not, "file a late notice of claim . . . within one year after the accrual of [the] claim." N.J. Stat. Ann. § 59:1–1 et seq. Failure to properly serve notice of a claim forever bars a claimant from recovering against that public entity. § 59:8–8; see also Kamienski v. Attorney General New Jersey, No. 11–3056, 2012 WL 4034236, at *6 (D.N.J. 2012).

The statute defines a "local public entity" as "a public entity other than the State." § 59:8–2. Being created by the New Jersey Public Transportation Act of 1979, codified at N.J.S.A. § 27:25–1 et seq., NJ Transit is such an entity. Plaintiff was therefore required to comply with NJTCA's procedural requirements in bringing this suit. On every front, however, she has not done so. The cause of action accrued on the date of the alleged injury, December 13, 2014. As such, Plaintiff's notice of claim was due on March 13, 2015 and her late notice of claim was due on December 13, 2015. Plaintiff does not contest failing to meet either of these deadlines. Instead, she opts to ignore the NJTCA throughout her filings, persistently maintaining that NJ Transit's duty-based arguments are the "only basis" for summary judgment. Dkt. 77-2 at 1–2.

Plaintiff's only opposition to NJTCA's notice requirements comes from a choice of law argument, where she asserts that New York law, as opposed to New Jersey, governs this dispute. However, "[u]nder New Jersey's choice-of-law rules, a court sitting in New Jersey is required to apply New Jersey rules to procedural matters even where those same rules require the application of the substantive law of another state." Tobin v. Samsung Electronics America, Inc., No. 18-12473, 2019 WL 1399557 (D.N.J. 2019) (quoting Chin v. Chrysler LLC, 538 F.3d 272, 279 (3d Cir. 2008)); see also Mitzel v. Westinghouse Elec. Corp. 72 F.3d 414, 418 (3d Cir. 1995) (quoting Du-Wel Products,

5

Inc. v. U.S. Fire Ins. Co., 565 A.2d 1113, 1120 (N.J. Super. Ct. App. Div. 1989)) ("It is a virtually axiomatic principle of conflicts of law that the procedural law of the forum applies even to causes of action governed by a different jurisdiction's substantive law."). Thus, even if New York law controlled Plaintiff's substantive negligence claims, New Jersey procedural law still applies. And if New Jersey procedural law applies, Plaintiff's claim must be dismissed for failure to comply with NJTCA's notice requirements.

**B. Lack of Duty**

While failure to comply with the NJTCA is enough to dismiss this case on its own, the Court will briefly engage the merits of Plaintiff's negligence argument to show that summary judgment is also appropriate on this substantive front.

In relation to her negligence claims, Plaintiff again argues that New York law applies. Since this is a substantive issue, the Court is not required to apply New Jersey law. Thus, it will engage in a choice of law analysis.

This Court exercises supplemental jurisdiction over the present matter pursuant to 28 U.S.C. § 1367. A federal court sitting in diversity must apply the choice-of-law rules of the forum state, here New Jersey. Hammersmith v. TIG Ins. Co., 440 F.3d 220, 226 (3d. Cir. 2007) (citing Klaxon v. Stentor Mfg. Co., 313 U.S. 487 (1941)). Under supplemental jurisdiction, the Court follows the same rules for determining substantive law as it would for diversity jurisdiction. Carbonaro v. Lutz, No. 08–4928, 2010 WL 3040036, at *3 n.4 (D.N.J. 2010) (citing 28 U.S.C. § 1652).

New Jersey uses the "most-significant relationship test" to resolve choice of law questions. McCarrell v. Hoffmann–La Roche, Inc., 153 A.3d 207, 219 (N.J. 2017) (citing P.V. ex rel. T.V. v. Camp Jaycee, 962 A.2d 453 (N.J. 2008)). This analysis requires "application of the law of the state with the greatest interest in resolving the particular

6

issue." Gantes v. Kason Corp., 679 A.2d 106, 109 (N.J. 1996). Under New Jersey rules, a proper choice of law analysis will "not [make] a single, immutable decision governing the entire action." Id. at 498 (citing Gantes v. Kason Corp., 648 A.2d 517, 891 (N.J. Super. Ct. App. Div. 1994) (dissenting). Rather, the analysis "must be undertaken on an issue-by-issue basis." Harper v. LG Elecs. USA, Inc., 595 F. Supp. 2d 486, 490 (D.N.J. 2009) (citing Rowe v. Hoffman-La Roche, Inc., 917 A.2d 767, 771 (N.J. 2007)).

The most-significant relationship test consists of two prongs. Camp Jaycee, 962 A2d at 143–44. First, the Court must determine whether an actual conflict exists between the laws of the respective states. Id. at 143. This includes "examining the substance of the laws" in order to determine whether "applying one jurisdiction's law over another's [will] impact the outcome" of the case. Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006) (citing Erny v. Estate of Merola, 792 A.2d 1208, 1216 (N.J. 2002). "If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same." Id. at 428 (citing Curtis T. Bedwell & Sons, Inc. v. Geppert Bros., Inc., 655 A.2d 483, 484–85 (N.J. Super. Ct. App. Div. 1995)).

If an actual conflict exists, however, the Court will proceed to step two, evaluating each state's interest "in applying its own law" in order to determine "which state has the most significant relationship to the parties and the event." Id. (citing Fu v. Fu, 733 A.2d 1133, 1138 (N.J. 1999)). In making this determination, "the substantive law of the place of injury is presumed to be the governing law . . . unless some other state has a more significant relationship with the parties and the occurrence based on an assessment of each state's contacts." McCarrell v. Hoffmann–La Roche, Inc., 153 A.3d 207, 219 (N.J. 2017) (citing Camp Jaycee, 962 A.2d at 459).

7

In the present matter, there is not a conflict of law between New Jersey and New York. Under the laws of both states, plaintiffs bringing claims for negligence must establish duty, breach, proximate cause, and damages. Fernandes v. DAR Dev. Corp., Inc., 119 A.3d 878, 885–86 (N.J. 2015) (citations omitted); Solomon v. New York, 499 N.Y.S.2d 392, 392 (1985). The states also use virtually identical factors in determining the existence of a duty. See Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110, 1116, 1118 (N.J. 1993) ("Whether a person owes a duty of reasonable care toward another turns on . . . the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care . . . the public interest in the proposed solution . . . [and] notions of fairness, common sense, and morality."); see also Davis v. S. Nassau Cmtys. Hosp., 26 N.Y.3d 563, 572 (2015) (quoting Hamilton v Beretta U.S.A. Corp., 96 N.Y.2d 222, 233 (2001) ("Courts resolve legal duty questions by resort to common concepts of morality, logic[,] . . . consideration of the social consequences of imposing the duty, [and] . . . whether 'the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm.'").

In addition, under both States' laws, premise liability requires "ownership of the pertinent property." Patrick by Lint v. City of Elizabeth, 159 A.3d 906, 913 (N.J. App. Div. 2017) (citing N.J. Stat. Ann. § 59:4-2); see also Brothers v. Borough of Highlands, 428 A.2d 528, 529–30 (N.J. App. Div. 1981) (rejecting appellant's attempt to extend liability under the NJTCA to property not owned by the municipality, concluding that "the plain language of the statute is to the contrary"); Miller v. State, 62 N.Y.2d 506, 513 (1984) (stating that "[a]s a *landowner*, the State must act as a reasonable [person] in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden

8

of avoiding the risk") (emphasis added) (internal citations and quotations marks omitted).

Since there is "not an actual conflict [between the laws of New Jersey and New York], the inquiry is over." Lebegern, 471 F.3d at 428 (citing Curtis, 655 A.2d at 484–85. New Jersey would apply its own law in this case and therefore "a federal court sitting in diversity must do the same." Id.

Under New Jersey law, summary judgment is appropriate. NJ Transit's leased premises at NYPS only includes elevators serving Tracks 1 through 12. Dkt. 75-17, ¶14. Thus, here, it is undisputed that Elevator 7, serving the platform between Tracks 13 and 14, is not a part of NJ Transit's premises. Dkt. 77-2 at 5. Despite these concessions, however, Plaintiff maintains that she "was directed to [Elevator 7]" and that this elevator took her to Tracks 13 and 14 where NJ Transit was "accepting passengers." Dkt. 77-2 at 1. In support, Plaintiff testifies that it "seem[ed] like" directions to Elevator 7 were called out. Dkt 75-9 at 18. She also submits a series of photographs at Tracks 13 and 14, which show a sign with the words "New Jersey" accompanying an arrow symbol. Dkt 75-6. According to Plaintiff, these facts show that NJ Transit used—but admittedly did not own or lease—Elevator 7 and Tracks 13 and 14. Dkt. 77-2 at 1.

While at odds with NJ Transit's records, this evidence does not create a "genuine" issue of fact. An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Here, however, Plaintiff has rested her case on "mere allegations, general denials [and] . . . vague statements.'" Trap Rock, 982 F.2d at 890 (quoting Quiroga, Inc., 934 F.2d at

9

500.[2] Indeed, she has not pointed to witness testimony, train schedules, affidavits, or any other affirmative evidence that would show a genuine issue exists for trial.

And even more, the evidence is not "material" because under the governing substantive law, here New Jersey, a dispute about these facts would not affect the outcome of the suit. Under the NJTCA, "a public entity is liable for injury caused by a condition of *its* property." N.J. Stat. Ann. § 59:4-2 (emphasis added). Here, Plaintiff has not alleged that Elevator 7 or Tracks 13 and 14 are NJ Transit's property.[3]

In addition, during oral argument, Plaintiff asserted liability against NJ Transit on the basis of its classification as a common carrier, contending that NJ Transit assumed responsibility for the fall when it directed Plaintiff to Elevator 7. This argument differs from the previous in that it relies on NJ Transit's direction alone, regardless of whether NJ Transit actually used or controlled Elevator 7.

Following oral arguments, the New Jersey Supreme Court decided Maison v. New Jersey Transit Corporation, which confirmed Plaintiff's classification of NJ Transit as a common carrier.[4] 245 A.3d 536 (N.J. 2021). Under this standard, NJ Transit is required to "exercise the utmost caution to protect [its] *passengers* as would a very careful and prudent person under similar circumstances." Id. at 539 (emphasis added). NJ Transit's classification as a common carrier, however, does not alter the conclusions already reached. At the time of the accident, Plaintiff was not using NJ Transit's property or transportation services. NJ Transit's heightened duty of care had therefore not attached.

---

[2] This conclusion, being based on the requirements of Fed. R. Civ. P. 56(a), would apply regardless of the state law used.
[3] Likewise, New York requires possession and control. Abdul-Azim v. RDC Commercial Ctr., 620 N.Y.S.2d 70 (App. Div. 1994) (citation omitted).
[4] On March 30, 2021, the Court entered an Order for Administration Termination so that the parties could submit additional briefing addressing the impact of Maison.

An allegation of a misleading announcement made by loudspeaker—made by someone who may or may not have been NJ Transit's representative—does not trigger a duty.

For all the same reasons, NJ Transit's duty to provide reasonably safe means of ingress and egress, does not encompass Elevator 7 or Tracks 13 and 14. While sometimes extending beyond the immediate area of a common carrier's ownership or control, the duty does not extend "to distant premises that [a common carrier] does not own, lease, control or maintain." Kantonides v. KLM Royal Dutch Airlines, 802 F. Supp. 1203, 1215 (D.N.J. 1992). If such were the case, "there would be no logical end to that duty." Id.

Thus, separate and apart from the procedural reasons already discussed, Plainitff's motion cannot survive on substantive negligence grounds either. There is simply no genuine issue of material fact with regards to NJ Transit's liability. And while the Court reached this conclusion by applying New Jersey law, the result would have been no different under New York law.

## IV.  Conclusion

For the reasons set forth above, the Court finds that Defendant's Motion for Summary Judgement is GRANTED. An appropriate Order shall follow.

Dated: June 24, 2021

/s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez
UNITED STATES DISTRICT COURT